UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLIE DEETER-LARSEN, et al.,

    Plaintiffs,

    v.

WHATCOM HUMANE SOCIETY, et al.,

    Defendants.

CASE NO. C18-300 RAJ

ORDER

This matter comes before the Court on Defendants Amber Itle and Washington State Department of Agriculture's (collectively, "Defendants") Motion for Summary Judgment (Dkt. # 85), and Defendants Whatcom Humane Society, Laura A. Clark, and Rebecca Crowley's (collectively, "Previous Defendants") Motion to Strike (Dkt. # 93). Plaintiffs oppose Defendants' Motion for Summary Judgment, and Defendants have filed a Reply. Dkt. ## 89, 94. For the reasons that follow, the Court **GRANTS** both Motions.

## I.   BACKGROUND

Plaintiffs operated a pig farm in Whatcom County. Dkt. # 41 at ¶ 10. Plaintiffs housed a number of animals on their farm, including multiple pigs, horses, and dogs. *Id.* at ¶¶ 11-13. Beginning in late 2015 and extending to 2016, Defendant Rebecca Crowley of the Whatcom Humane Society made repeated visits to Plaintiffs' farm to investigate the treatment of the animals. *Id.*

ORDER – 1

In November 2015, Crowley requested field veterinary assistance in observing pigs owned by Plaintiffs. Dkt. # 87 at ¶ 8. However, Dr. Itle did not visit Plaintiffs' property nor did she inspect the pigs in response to that request. *Id.* On March 21, 2016, Defendant Crowley requested again via email that Defendant Dr. Itle conduct a general examination of 7 horses and 7 pigs owned by Plaintiffs. *Id.* at ¶ 9, Ex. B.[1] This email advised that Ms. Crowley had just gotten a warrant to seize the animals. Dkt. # 87 at ¶ 9, Ex. B. Dr. Itle responded, indicating she was unavailable to examine the animals. *Id.* On March 25, 2016, Ms. Crowley again requested that Dr. Itle examine the same horses and pigs. Dkt. # 87, Ex. C. On March 26, 2016, Plaintiffs' animals were seized from their property by Whatcom County Humane Society. Dkt. # 86, ¶ 3; Ex. A at 75:20-22. On the same day, Dr. Itle responded to Ms. Crowley's e-mail of March 25, and advised that Dr. Itle was willing to assess the animals and/or educate the owners on proper swine care the following day. Dkt. # 87 at ¶ 10, Ex. C. On March 27, 2016, Ms. Crowley limited her request for field veterinary assistance to Plaintiffs' horses. *Id.*

On March 28, 2016, Dr. Itle conducted an assessment of the horses at a boarding facility in Lynden, Washington, and drafted a report of her findings. Dkt. # 87 at ¶ 11. In the first draft of her report, Dr. Itle concluded that some of the horses were in poor condition, and that though all of the horses appeared to be stable at the time she examined them, she found evidence of long-term neglect. Dr. Itle noted that the horses had a good prognosis for recovery with proper management of parasites, skin disease and nutritional

---

[1] From 2015 to 2016, the state veterinarian's office of the Washington Department of Agriculture ("WSDA") had a standard procedure with regard to requests for veterinary assistance in handling animal cruelty or neglect investigations. Dkt. # 87 at ¶ 5, Ex. A. Per their standard procedure, the office would only accept requests for assistance in animal cruelty or neglect investigations from law enforcement agencies. Dkt. # 87, ¶ 6. Law enforcement agencies (including Whatcom County and the Whatcom County Humane Society, pursuant to a commission) were first directed to contact local, private sector veterinarians. *Id.* If law enforcement were unable to secure a private-sector veterinarian, the state veterinarian's office would consider and approve assistance requests on a case-by-case basis. *Id.* Investigation assistance, if approved, was then done by a "field veterinarian" voluntarily and for no compensation. *Id.* If a request was approved, the veterinarian's involvement was limited to observing and documenting the overall conditions of the animals, which were then memorialized in a written report that was to be provided to the law enforcement agency requesting assistance. *Id.* at ¶ 7.

ORDER – 2

management. *Id.*, Ex. D at 3. Dr. Itle's draft also included two pictures of the pigs on the last page, with the sole comment "Skinny pigs!" *Id.* at 12.

On April 2, 2016, Dr. Itle emailed Ms. Crowley the first draft of her report. In her email, Dr. Itle requested feedback on any changes or adjustments, and indicated that she had left several places blank on the first page of the report, next to the portions of the report that identified the case number and the name of the owners. Dkt. # 87 at ¶ 12, Ex. D. That same day, Ms. Crowley responded, suggesting changes that included providing a case number, citation number and name of the owners, as well as a specific address as opposed to the general location identified in Dr. Itle's first draft of her report. *Id.* at ¶ 13, Ex. E. Ms. Crowley also noted that the horses came back from another pasture in December. *Id.* Finally, Ms. Crowley wrote to Dr. Itle "[c]hange whatever you want, or leave it as is." *Id.*

Dr. Itle revised the report to reflect the suggested changes, but in reviewing the report, also revised two sentences that read: "After a discussion with WHS officers a few months ago, the horses were moved to a neighboring pasture but recently returned to the owner's premise. This may explain why the condition of many of the horses has improved since that time." Dkt. # 87, ¶ 14. Dr. Itle revised those two sentences to read: "After a discussion with WHS officers a few months ago, the horses were moved to a neighboring pasture but returned to the owner's premise in December." *Id., see also* Dkt. # 87, Ex. F at 3. Dr. Itle contends that she revised these sentences because (1) the sentences were not part of her first-hand assessment based on her own observations, as she had not personally examined the horses prior to March 28, 2016; (2) she believed that the sentences were also inaccurate, given that she had concluded that the horses had not properly been cared for and that she had found evidence of long-term neglect toward the horses; and (3) she believed that the sentences, as initially drafted, could have also been read to improperly speculate that the horses had improved since being moved off

ORDER – 3

Plaintiffs' property. *See* Dkt. # 87, ¶ 15, Ex. D. Finally, Dr. Itle appeared to edit the previous draft report's brief sentence on the pigs, noting that "although [she] did not do thorough examinations on these pigs, many were in extremely poor body condition score and also showed evidence of neglect," and again included pictures of three of the pigs in question. Dkt. # 87, Ex. F.

On March 31, 2016, the Whatcom County Prosecuting Attorney's Office charged Plaintiff Kellie Deeter-Larsen with 30 counts of animal cruelty in relation to her treatment of the pigs. Dkt. # 92-6; *see also* Dkt. # 41, ¶ 19. On April 7, 2016, Dr. Itle sent Ms. Crowley her final report via email. Dkt. # 87 at ¶ 16, Ex. F. Of the charges levied against Ms. Deeter-Larsen, 29 were dismissed in July 2016, while Ms. Deeter-Larsen pled guilty to one count of second degree animal cruelty. Dkt. # 86, Ex. B. Ms. Deeter-Larsen's guilty plea was vacated on or about March 1, 2018. Dkt. # 92-4 at 60-62.

Plaintiffs allege that during the time period of the seizure and prior visits, Whatcom Humane Society employees acted without limited commissions from Whatcom County Sherriff's Office and without authorization from Whatcom County Superior Court to act as animal control officers pursuant to the requirements of RCW 16.52. Dkt. # 41 at ¶¶ 21-24. Dr. Itle contends that at all times related to her involvement in this matter she believed that Whatcom County Humane Society was validly acting as law enforcement, executing warrants and investigating animal cruelty criminal matters pursuant to a valid commission by Whatcom County. Dkt. # 87, ¶ 21. Accordingly, she did not communicate with the Whatcom County Sheriff's Office or the Whatcom County Prosecutor's Office related to her observations of Plaintiffs' animals. *Id*. at ¶ 22.

On February 27, 2018, Plaintiffs filed this lawsuit against Defendants Whatcom Humane Society, Laura A. Clark, Whatcom County, Rebecca Crowley, Washington State Department of Agriculture, and Amber Itle. Dkt. # 1. Most of these Defendants have

ORDER – 4

reached a resolution of this matter with Plaintiffs. Dkt. # 82. Dr. Itle and WSDA are the only remaining Defendants in this matter.

## II. DISCUSSION

### A. Previous Defendants' Motion to Strike (Dkt. # 93)

As an initial matter, the Court considers a Motion to Strike filed by previously dismissed Defendants Whatcom Humane Society, Laura Clark, and Rebecca Crowley ("Previous Defendants"). Dkt. # 93. The Previous Defendants move to strike a portion of Plaintiffs' Response (Dkt. # 89); specifically, page 6, lines 13-16, where Plaintiffs state "[o]n February 22, 2019, a judgment was filed against Whatcom Humane Society, Laura Clark, Whatcom County, and Rebecca Crowley holding them liable for all civil rights violations (Dkt. 83)." *Id*. The Previous Defendants contend that this is factually and legally incorrect because the making and acceptance of an offer for judgment, and the entry of such judgment, does not equate to a finding of liability. *Id*. at 2.

The Court agrees with the Previous Defendants. First, Plaintiffs have failed to respond to the Motion to Strike, which the Court can interpret as an admission the Motion to Strike has merit. W.D. Wash. Local Civil Rule 7(b)(2). Second, the Court agrees that the Previous Defendants' Offer of Judgment, and Plaintiffs' acceptance, do not constitute a finding of liability. *See, e.g., Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1140-41 (9th Cir. 2016) (distinguishing admissions of liability from Rule 68 offer of judgment); *Early v. Keystone Rest. Grp., LLC*, 2:16-CV-00740-JAM-DB, 2019 WL 918211, at *2 (E.D. Cal. Feb. 25, 2019) (citing cases and holding that "a Rule 68 offer need not admit liability, so long as it is a valid offer of judgment"). The Previous Defendants' Offer of Judgment contained no language regarding any admission of liability (see Dkt. # 82), and such an admission does not occur automatically. Moreover, the Court has not separately determined any liability for the Previous Defendants. Plaintiffs' statement was thus factually and legally erroneous.

ORDER – 5

Accordingly, the Court **GRANTS** the Previous Defendants' Motion to Strike. Dkt. # 93. Page 6, Lines 13-16 of Plaintiffs' Response (Dkt. # 89) are hereby **STRCIKEN** from the record and will not be considered by this Court.[2]

### B. Current Defendants' Motion for Summary Judgment (Dkt. # 85)

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must first show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden shifts to the opposing party to show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

The remaining Defendants, Dr. Itle and WSDA, move to dismiss all of Plaintiffs' claims against them. Dkt. # 85 at 5. Initially, Defendants argued these claims were limited to Plaintiffs' trespass and negligence claims, which Plaintiffs seemingly did not contest in an e-mail exchange prior to Defendants' filing. Dkt. # 85 at 6; Dkt. # 86 at ¶¶ 5-6, Ex. C. The parties also address two additional claims that only appear to be asserted against the remaining Defendants in Plaintiffs' proposed Second Amended Complaint; civil conspiracy and a civil rights claim under Section 1983. Dkt. ## 89, 94; *see also* Dkt

---

[2] The Court also acknowledges the remaining Defendants' request to strike certain materials contained in Plaintiffs' Response and supporting materials. Dkt. # 94 at 2-5. While the Court agrees that much of the material at issue is irrelevant and likely based on inadmissible evidence, because the Court dismisses all of Plaintiffs' claims in this Order, it need not rule on this request, which is now moot.

ORDER – 6

# 52-1.[3]  The Court addresses each in turn, and finds for Defendants on all claims.

### 1. Trespass Claim

Defendants first contend that Plaintiffs' trespass claim should be dismissed because they did not enter Plaintiffs' property. Dkt. # 85 at 6-7. Under Washington law, "[a] person is liable for trespass if he or she intentionally (1) enters or causes another person or a thing to enter land in the possession of another, or (2) remains on the land, or (3) fails to remove from the land a thing that he or she is under a duty to remove." *Brutsche v. City of Kent,* 164 Wash.2d 664, 673, 193 P.3d 110 (2008).

Plaintiffs concede that their trespass claims against the remaining Defendants should be dismissed with prejudice, and the Court agrees. Dkt. # 89 at 2. Accordingly, the Court **GRANTS** Defendants' Motion on this claim, and **DISMISSES** Plaintiffs' trespass claim with prejudice.

### 2. Negligence Claim

A negligence action requires a showing of duty, breach, causation, and damages. *Ranger Ins. Co. v. Pierce County*, 164 Wash.2d 545, 552, 192 P.3d 886 (2008). Accordingly, liability in tort for negligence may lie only where the defendant owes the plaintiff a duty of care. *Caulfield v. Kitsap County*, 108 Wash. App. 242, 250, 29 P.3d 738 (2001). Moreover, under the public duty doctrine, state entities are not liable for their negligent conduct even where a duty does exist unless the duty was owed to the injured person and not merely the public in general. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988).

---

[3] Plaintiffs filed a Motion for Leave to File a Second Amended Complaint on December 5, 2018, adding a civil rights claim against the remaining Defendants and clarifying that the civil conspiracy claim of prior pleadings applied to these Defendants. Dkt. # 52-1. The Court terminated this motion. To dispel any confusion, the Court will now make clear that it **DENIES** Plaintiffs' request to file a Second Amended Complaint. Dkt. # 52. This request comes after the deadline the Court imposed for filing amended pleadings (Dkt. # 24), and the additional civil rights claim asserted exceeds the leave the Court granted Plaintiffs to assert new defamation claims. Dkt. # 39. Moreover, as set forth in this Order, the proposed Second Amended Complaint fails to state a claim against the remaining Defendants.

ORDER – 7

Defendants contend that Plaintiffs' negligence claim should be dismissed because Plaintiffs cannot prove any of its required elements. Dkt. # 85 at 7-14. Defendants also argue that the public duty doctrine insulates Dr. Itle's conduct in this case because she did not owe a separate duty to Plaintiffs. *Id*. at 7-11. Plaintiffs respond that Dr. Itle and the WSDA committed "negligence inside of an intentional tort," and that the public duty doctrine does not insulate Defendants because it "applies only to pure negligence claims." Dkt. # 89 at 7. Plaintiffs claim that in this case, "any acts of negligence by the defendants were encapsulated inside of deliberate and intentional civil conspiracy acts directed at the Plaintiffs, and not merely liability stemming from general government policy." *Id*. at 7-8. This contention appears to be a broad reimagining of Plaintiffs' pleadings at a very late stage of litigation, and seems to conflate Plaintiffs' negligence and civil conspiracy claims. It also appears to admit that the public duty doctrine would apply to bar Plaintiffs' negligence claims against Dr. Itle to the extent they are distinct from the intentional tort claims. The Court agrees with Defendants that in this case, the public duty doctrine applies to Dr. Itle's conduct, and Plaintiffs have failed to dispel the application of this doctrine.[4]

However, whether or not the public duty doctrine applies, or a duty was otherwise owed to Plaintiffs, Plaintiffs fail to address Defendants' argument that the negligence claim fails due to lack of causation and damages. Dkt. # 85 at 11-13. The Court agrees with Defendants that Plaintiffs fail to show that the actions of Dr. Itle in drafting and revising her report contributed to or caused any resulting damage. As Defendants note, Plaintiffs have not established that the Whatcom County Prosecutor's Office or Sheriff's Office were even provided with a copy of Dr. Itle's report, and there is

---

[4] Plaintiffs briefly allege in their Response that Dr. Itle breached a "specific" duty by not following internal WSDA policy and for exceeding the statutory under RCW 43.23.070, which Plaintiffs contend "restricts their power and duties to disease and meat inspection." Dkt. # 89 at 8. However, the Court agrees with Defendants that Dr. Itle's alleged failure to follow internal policy does not, in this case, create an enforceable duty, and such policies do not have the force of law. *Joyce v. State, Dep't of Corr.*, 155 Wn.2d 306, 323, 119 P.3d 825, 834 (2005). Moreover, RCW 43.23.070 grants state veterinarians broad powers that Dr. Itle did not exceed in this case.

ORDER – 8

little indication in the record her report had anything to do with the charging decisions. Plaintiffs' bare contention that Dr. Itle's report "served as a basis for the property forfeiture, trespasses, and a host of substantive property deprivations and civil rights violations" is not accompanied by any citation to any admissible evidence in the record, and the Court cannot find any on its own accord. Dkt. # 89 at 8. The record instead reflects that the animals were already seized when Dr. Itle conducted her assessment. At this point, any causal link between Dr. Itle's actions and Plaintiffs' alleged damage would be entirely speculative. At this stage of litigation, Plaintiffs are required to put forth more of a showing than mere speculation, and they have failed to do so.[5] The Court finds that no reasonable jury could find for Plaintiffs on their negligence claims.

Accordingly, the Court **GRANTS** Defendants' Motion on this point and **DISMISSES** Plaintiffs' negligence claim against the remaining Defendants.

### 3. Civil Conspiracy Claim

To establish a claim for civil conspiracy, a plaintiff must show "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) . . . an agreement to accomplish the conspiracy." *Woody v. Stapp*, 146 Wn. App. 16, 22, 189 P.3d 807, 810 (2008) (internal citation omitted). A claim for civil conspiracy must be predicated on "a cognizable and separate underlying claim." *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011).

---

[5] Plaintiffs also contend that the WSDA was negligent, but gives only a series of unsupported and conclusory arguments as to how, including "by taking dictation and revision based on hearsay from outside sources; failing to train to identify legitimate law enforcement agency requests; failing to make any efforts to interview the Plaintiffs to find out what care was being provided; failing to make effort to learn of the origin of the animals to determine that several of these animals were rescues and had lived in the wild; or failing to examine or test the food that was being provided by the owners." Dkt. # 89 at 8-9. These halfhearted arguments suffer from the same defects as the claim against Dr. Itle. Plaintiffs do not provide any analysis or evidence that these actions or inactions were covered by any duty owed to Plaintiffs by WSDA, and fail to dispel the application of the public duty doctrine. Plaintiffs also again fail to plead or show the requisite causation and damage elements for this negligence claim.

ORDER – 9

Although Plaintiffs' previous pleadings asserted a civil conspiracy claim generally, the details of Plaintiffs' civil conspiracy claim as it relates to Dr. Itle and WSDA were not made clear until Plaintiff's Proposed Second Amended Complaint, which alleges that "Whatcom Humane Society, Rebecca Crowley, and Amber Itle conspired to alter discovery to cover up exculpatory evidence, specifically the fact that Plaintiff's horses had improved in their condition since being moved back to Plaintiff's pasture and under Plaintiff's care." Dkt. # 52-1 at ¶ 26. As noted above, the Court never granted Plaintiffs' Motion to Amend (Dkt. # 52), so this clarifying allegation is not technically before this Court. Even if it was, however, the Court would find for Defendants. Plaintiffs have failed to identify any evidence in the record showing any "agreement" between Dr. Itle and the Previous Defendants to "cover up exculpatory evidence." As noted above, the evidence shows that Dr. Itle revised her report based on her own judgment and to improve the accuracy of the report, not on any illicit "agreement" to hide evidence from Plaintiffs. Dkt. # 87, ¶¶ 13-17, Exs. E, F. Dr. Itle also had seemingly no control or communication over what was to happen after her report's completion, such as whether or not it (and the first draft of the report) were ever disclosed to Plaintiffs in ongoing criminal proceedings. *Id.* at ¶ 17.

Additionally, Plaintiffs do not identify with any clarity any "underlying claim" for their alleged civil conspiracy, aside from their alleged civil rights claim. As noted below, the civil rights claim fails on multiple levels, rendering a civil conspiracy claim predicated on such a claim a nullity. *Oregon Laborers-Employers Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 969 (9th Cir. 1999) (where "underlying claims fail, plaintiffs' civil conspiracy claim must also fail).

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' Civil Conspiracy claim.

ORDER – 10

### 4. Civil Rights Violation Claim

While the Court has terminated Plaintiffs' Motion to Amend (Dkt. # 52), it did not address the merits of Plaintiffs' newly-asserted Section 1983 claim against Defendant Dr. Itle set forth in Plaintiffs' Proposed Second Amended Complaint (Dkt. # 52-1). It does so now.[6] Plaintiffs' proposed civil rights claims in this case are brought under 42 U.S.C. § 1983. To prevail under 42 U.S.C. § 1983, a plaintiff must prove that s/he suffered the deprivation of a constitutional or federal right by a person acting under color of state law. *Chudacoff v. Univ. Med. Cntr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011).

As alleged in Plaintiff's Proposed Second Amended Complaint, Dr. Itle allegedly violated Section 1983 because she, along with Previous Defendants WHS and Rebecca Crowley, "deliberately withheld exculpatory evidence as well as provided false evidence, thereby misleading and misdirecting the state criminal prosecution of Plaintiff Kellie Deeter-Larsen in violation of Plaintiff's due process clause of the Fourteenth Amendment of the United States Constitution, denying Plaintiff a right to a fair trial, and in violation of *Brady v. Maryland*." Dkt. # 52-1 at ¶ 67. Accordingly, Plaintiffs' 1983 claim rests primarily on a *Brady* violation theory. There are three essential components of a violation under *Brady v. Maryland,* 373 U.S. 83 (1963): "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Plaintiffs' allegations are not supported by the factual record, and even if they were, Plaintiffs fail to set forth a viable Section 1983 claim. First, because Dr. Itle is not a law enforcement officer, and was not involved in the prosecution of Plaintiffs, she cannot be held liable for a *Brady* violation. *See, e.g., United States v. Johnson*, 557 F. Supp. 2d 1066, 1071–72 (N.D. Cal. 2008), *aff'd*, 360 Fed. App'x. 840 (9th Cir. 2009)

---

[6] Plaintiffs admit that their Section 1983 claim against Defendant WSDA should be dismissed with prejudice. Dkt. # 89 at 2. The Court agrees.

ORDER – 11

(finding no *Brady* violation could lie against cooperating witness because he "was not a law enforcement officer, nor was he responsible for making prosecutorial decisions with respect to [claimants]"). Second, even if a *Brady* claim could theoretically lie against Dr. Itle, it would fail because the allegedly "exculpatory" information in Dr. Itle's report pertaining to the treatment of Plaintiffs' horses would not have been material, or exculpatory. To establish prejudice under *Brady*, courts look to the materiality of the suppressed evidence. *Id.* at 282. "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). Plaintiffs have failed to make any such showing, and the record indicates that Dr. Itle's report, which focused primarily on the treatment of horses, had no effect on the charging decisions related to the pigs.[7] Moreover, as Defendants note, the sentence at issue regarding the horses' improving conditions was potentially *unfavorable* to Plaintiffs because it could be reasonably read as observing that the horses' conditions improved after being removed from Plaintiffs' property. *Id.* at ¶ 15; Ex. E. There is no indication the report played any role at all in Ms. Deeter-Larsen's decision to plead guilty to one count of animal cruelty. As for the other 29 charges, there were no convictions, and a *Brady* violation cannot occur where there is no conviction. *Forte v. Cty.*, 1:15-CV-0147 DAD-BAM, 2016 WL 4247950, at *5 (E.D. Cal. Aug. 11, 2016), *report and recommendation adopted sub nom. Forte v. Merced Cty.*, 115CV00147DADBAM, 2016 WL 6599747 (E.D. Cal. Nov. 7, 2016), *aff'd*, 698 Fed. Appx. 554 (9th Cir. 2017); *see also Dinius v. Perdock*, No. C 10-3498 MEJ, 2012 WL 1925666, at *5-6 (N.D. Cal. May 24, 2012) (dismissing with prejudice plaintiff's Section 1983 claim under *Brady* because he had been acquitted in the underlying criminal matter).

---

[7] Although both versions of Dr. Itle's report contained a single, isolated sentence addressing the pigs' condition, Plaintiffs do not provide, and the Court cannot find, any indication in the record that these comments played any role in the charging decisions or Plaintiffs' damages in this case.

ORDER – 12

Moreover, as noted above, the causal relationship between Dr. Itle's conduct and any resulting deprivation of Plaintiffs' constitutional rights is suspect at best. Any theoretical connection between Dr. Itle's report and the resulting criminal charges against Plaintiffs in Whatcom County is tenuous at best, and the factual record is practically barren of any evidence of this occurring. There is little indication in the record that Dr. Itle's reports played any role at all in the decision of prosecutors to charge Plaintiffs with animal cruelty. That Dr. Itle's report focused primarily on her examination of the already-seized horses, and Plaintiffs were charged with animal cruelty for their treatment of the pigs, only further illustrates that tenuous causal connection.

The Court thus finds that Plaintiffs have failed to state, or show, a viable Section 1983 claim based on the alleged *Brady* violation. Plaintiffs also fail to identify any other Constitutional right implicated by Dr. Itle's conduct separate from the *Brady* violation.[8] Moreover, even if the Court found such a violation here, it would also find that Dr. Itle is entitled to qualified immunity. "Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shafer v. Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (internal quotation marks omitted). "To determine whether qualified immunity applies in a given case, [courts] must determine: (1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Shafer*, 868 F.3d at 1115. Clearly established constitutional rights are those that a reasonable official could compare his actions to and understand whether or not their behavior violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Anderson v. Creighton*, 483 U.S.

---

[8] Plaintiffs' casual reference to a "right to a fair trial" in their Proposed Second Amended Complaint appears to relate to the alleged *Brady* violation, though Plaintiffs offer no additional clarification on this right in their subsequent filings.

ORDER – 13

635, 640 (1987)) (internal citations omitted).  As noted above, Plaintiffs have failed to show how Defendants violated any of their constitutional rights, let alone any that were "clearly established."

The Court thus finds for Defendants on this claim, and **GRANTS** Defendants' Motion for Summary Judgment.  Because Plaintiffs' request to add this claim to the case against Dr. Itle has not specifically been ruled upon, the Court will **DENY WITH PREJUDICE** Plaintiffs' request to do so.  To the extent this claim is already asserted inherently through Plaintiffs' other claims, it is **DISMISSED**.

### III.  CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Defendants' Motions. Dkts. ## 85, 93.  The Clerk is directed to enter judgment for Defendants Amber Itle and Washington State Department of Agriculture on all remaining claims.

DATED this 19th day of June, 2019.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 14